## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **JOHN M. GRUTTEMEYER**, an<br><br>individual, Plaintiff, | | Case No.8:18-cv-<u>70</u> |
| v. | | |
| **THE TRANSIT AUTHORITY OF THE CITY OF OMAHA D/B/A METRO AREA TRANSIT,** a Nebraska corporation, and **TRANSPORTATION WORKERS UNION OF AMERICA, LOCAL 223**<br><br>Defendants. | | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Place of Trial:  Omaha** |

1.      John M. Gruttemeyer ("Mr. Gruttemeyer") worked as a utility placer for The Transit Authority of The City of Omaha d/b/a Metro Area Transit ("Metro" or "the Company") until he was terminated on July 7, 2016.  Mr. Gruttemeyer also served as the Vice President of Transportation Workers Union of America, AFL-CIO, Local 223 ("TWU Local 223") until March 1, 2016.

2.      As a utility placer, Mr. Gruttemeyer fueled, washed and parked busses as they returned to Metro's main office.

3.      Mr. Gruttemeyer suffers from bi-polar disorder.  Bi-polar disorder is a medically recognized disability that causes sleep difficulties, difficulty concentrating and challenges with social interactions.   Mr. Gruttemeyer was hospitalized for intensive treatment of bipolar disorder

1

4.      On or around December 14, 2015, Mr. Gruttemeyer assisted co-worker James Miller with an age discrimination complaint that Mr. Miller brought to manager Curt Simon.

5.      After a Union meeting on January 15, 2016, TWU Local 223 President Joe Boncardo ("Boncardo") told Union Steward Dave Gillespie ("Gillespie") that Boncardo could not get along with Mr. Gruttemeyer because "that guy is crazy and he's out of control."  Boncardo also called Mr. Gruttemeyer a "nut case," and invited TWU Local 223 members to confirm Boncardo's assessment by performing a Google search using the terms "John Gruttemeyer" and "firefighter."

6.      On February 22, 2016, Boncardo delivered formal charges against Mr. Gruttemeyer alleging that Mr. Gruttemeyer "violated the Constitution and By-Laws of the International and Local in his unbecoming conduct" by, among other things, assisting Mr. Miller in his age discrimination complaint to Curt Simon.

7.      Boncardo delivered his "formal charges" to Mr. Gruttemeyer during Mr. Gruttemeyer's shift and on company time in violation of Metro's policies.  Boncardo did so in an attempt to instigate an altercation with Mr. Gruttemeyer.

8.      Mr. Gruttemeyer responded by stating that charges were "trumped up" and calling the charges "bullshit."  Boncardo threatened to report Mr. Gruttemeyer's off-color language to Kelly Shadden ("Shadden").  Mr. Gruttemeyer agreed to accompany Boncardo while he made the report.  On the way to Shadden's office, Boncardo told Mr. Gruttemeyer that he was "not right in the head" and needed to "get some help."  After remaining silent for the duration of Boncardo's attack on his mental

health, Mr. Gruttemeyer became angry and reciprocated Boncardo's insults.   Mr. Gruttemeyer never threatened Boncardo during this confrontation.

9.     That same day, Metro suspended Mr. Gruttemeyer with pay, allegedly for threatening co-worker and TWU Local 223 President Joe Boncardo.   Mr. Gruttemeyer was suspended "pending an investigation."

10.     On March 14, 2016, shortly after Metro suspended Mr. Gruttemeyer, Mr. Miller submitted to Maintenance Supervisor Glenn Bradley a complaint regarding multiple incidents where Boncardo physically and verbally threatened Mr. Miller with violence.   Despite Mr. Miller's detailed and well-supported complaint to management, Boncardo was never reprimanded or suspended.

11.     Metro allowed Mr. Gruttemeyer to return to work on May 13, 2016, only to send him home that same day to continue his suspension.

12.     On June 17, 2016, Mr. Gruttemeyer submitted a letter to Curt Simon detailing Metro and TWU Local 223's acts of discrimination against Mr. Gruttemeyer on the basis of his disability and for representing Mr. Miller.

13.     On the same day, Gillespie submitted a second letter in support of Mr. Gruttemeyer, this time to Curt Simon.  Gillespie again offered his account of the events that transpired on February 22, 2016, which corroborated Mr. Gruttemeyer's account. Gillespie further described Boncardo's discriminatory behavior toward Mr. Gruttemeyer.

14.     In total, Metro's suspension of Mr. Gruttemeyer dragged on for nearly five (5) months.  Metro ultimately terminated Mr. Gruttemeyer on July 7, 2016.

3

15.     Mr. Gruttemeyer submitted witness statements and employee reports that demonstrated he did not threaten Boncardo.   Metro ignored all evidence Mr. Gruttemeyer submitted.

16.     On July 9, 2016, Mr. Gruttemeyer requested TWU Local 223 take his termination to arbitration.

17.     On August 2, 2016, TWU Local 223 informed Mr. Gruttemeyer by letter that it would not arbitrate his termination.

## VENUE & JURISDICTION

18.     This matter arises under federal and state law. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 based on Mr. Gruttemeyer's federal claims in this Complaint. This Court has supplemental jurisdiction of the Nebraska state law claims pursuant to 28 U.S.C. § 1367.

19.     Venue is proper in this District pursuant to 28 U.S.C § 1391(b)(2), because the acts forming the basis for this Complaint were orchestrated from, planned in and conducted in this District.

20.     Mr. Gruttemeyer dual filed charges of disability discrimination and retaliation against Metro with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC"). *See* NEOC Charge NEB 2-16/17-8-47783-RD; EEOC Charge No. 32E-2016-00753. The EEOC issued its Notice of Right to Sue on January 8, 2018. (A true and correct copy of the EEOC Notice of Right to Sue is attached as Exhibit A and incorporated here as if fully set forth.)

21.     Mr. Gruttemeyer also dual filed charges of disability discrimination and retaliation against TWU Local 223 with the NEOC and EEOC.  *See* NEOC Charge NEB 1-16/17-7-48135-RD; EEOC Charge No. 32E-2016-00665.  The EEOC issued its Notice of Right to Sue on January 8, 2018.  (A true and correct copy of the EEOC Notice of Right to Sue is attached as Exhibit B and incorporated here as if fully set forth.)

## PARTIES

22.     Mr. Gruttemeyer is a former Metro utility placer who suffers from a disability.  He is a citizen and resident of Papillion, Nebraska.

23.     Metro is a governmental subdivision of the State of Nebraska. Metro is located at 2222 Cuming Street, Omaha, NE 68102. Since May 31, 1972, Metro has provided public transportation services to Omaha and the surrounding metropolitan area.

24.     TWU Local 223 is an organization consisting of city bus drivers, mechanics and maintenance workers employed by Metro, a governmental subdivision of the State of Nebraska.  TWU Local 223 is the recognized bargaining agent of these employees.  TWU Local 223 has in force a collective bargaining agreement ("CBA") with Metro.

## STATE AND FEDERAL LAW PROHIBIT
## DISCRIMINATION BASED ON DISABILITY
Americans With Disabilities Act Of 1990
42 U.S.C. § 12101 et seq.
Neb. Rev. Stat. § 48-1104

25.  The Americans with Disabilities Act ("ADA"), prohibits discrimination against a qualified individual with respect discharge.  Under the ADA, an individual is "disabled" if he satisfies one of three conditions:

> **he has a physical or mental impairment** that substantially limits one or more of her major life activities; (2**) has a record of such an impairment**; **or** (3) **is regarded by her employer as having such an impairment**.

42 U.S.C. § 12102(1).

26.    A disabled individual must demonstrate impairment that "substantially limits" one or more major life activities.  42 U.S.C. § 12102(2).  According to the ADA Amendments of 2008, effective January 1, ,2009, "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.  29 C.F.R. § 1630.2(j)(1).  "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating and working." 42 U.S.C.A. § 12102(2)(A).

## CLAIM ONE

**METRO VIOLATED STATE & FEDERAL
LAW PROHIBITING
DISCRIMINATION BASED ON DISABILITY**
Americans With Disabilities Act Of 1990
42 U.S.C. § 12101 et seq.
Neb. Rev. Stat. § 48-1104

27.     Mr. Gruttemeyer incorporates by reference paragraphs 1-26, as if fully set forth.

28.     Mr. Gruttemeyer has been diagnosed with bipolar disorder.  Bipolar disorder causes Mr. Gruttemeyer difficulties with sleep, concentration and social interaction.

29.     Mr. Gruttemeyer is under the supervision of a doctor to help manage the symptoms of his bipolar disorder.

30.     Metro was aware of Mr. Gruttemeyer's bipolar disorder and treated Mr. Gruttemeyer differently from other employees on the basis of his bipolar disorder.

31.     Metro claims it suspended and ultimately terminated Mr. Gruttemeyer based on Boncardo's claim that Mr. Gruttemeyer threatened him. Metro's excuse is not believable.  In fact, when Boncardo, a non-disabled co-worker, was accused of the same or similar conduct, Metro neither suspended nor terminated him.

32.     Metro was aware that Mr. Gruttemeyer's co-worker, Boncardo, was subjecting Mr. Gruttemeyer to a hostile work environment based on his disability.  Even though Metro knew about Boncardo's ongoing harassment of Mr. Gruttemeyer, Metro did nothing.

33.     There is no legitimate basis justifying Metro's discriminatory treatment of Mr. Gruttemeyer simply because he was diagnosed with bipolar disorder.

## CLAIM TWO

**METRO VIOLATED FEDERAL
LAW PROHIBITING DISCRIMINATION BASED ON
RECORD OF DISABILITY**
Americans With Disabilities Act Of 1990
42 U.S.C. § 12101 et seq.
Neb. Rev. Stat. § 48-1104

34.    Mr. Gruttemeyer incorporates by reference paragraphs 1-33, as if fully set forth.

35.    Mr. Gruttemeyer has a record of being diagnosed with bipolar disorder.

36.    Metro was aware of Mr. Gruttemeyer's record of being diagnosed with bipolar disorder and treated Mr. Gruttemeyer differently from other employees on the basis of his record of having bipolar disorder.

37.    Metro claims it suspended and ultimately terminated Mr. Gruttemeyer based on Boncardo's claim that Mr. Gruttemeyer threatened him. Metro's excuse is not believable.  In fact, when Boncardo, a co-worker with no record of disability, was accused of the same or similar conduct, Metro neither suspended nor terminated him.

38.    Metro was aware that Mr. Gruttemeyer's co-worker, Boncardo, was subjecting Mr. Gruttemeyer to a hostile work environment based on his record of disability.  Even though Metro knew about Boncardo's ongoing harassment of Mr. Gruttemeyer, Metro did nothing.

39.    There is no legitimate basis justifying Metro's discriminatory treatment of Mr. Gruttemeyer simply because he has a record of being diagnosed with bipolar disorder.

**CLAIM THREE**
**TWU LOCAL 223 VIOLATED STATE & FEDERAL**
**LAW PROHIBITING**
**DISCRIMINATION BASED ON DISABILITY**
Americans With Disabilities Act Of 1990
42 U.S.C. § 12101 et seq.
Neb. Rev. Stat. § 48-1104

40.     Mr. Gruttemeyer incorporates by reference paragraphs 1-39, inclusive, as if fully set forth.

41.     TWU Local 223 discriminated against Mr. Gruttemeyer based on his disability by subjecting him to a hostile work environment based on his disability. Specifically, TWU Local 223 President Joe Boncardo made derogatory and hateful comments about Mr. Gruttemeyer's disability to Mr. Gruttemeyer and other union members.  For example, Mr. Boncardo regularly called Mr. Gruttemeyer "crazy," "out of control," "not right in the head," and said that Mr. Gruttemeyer needed to "get some help."

42.     TWU Local 223 discriminated against Mr. Gruttemeyer based on his disability by forcing him to resign his position as TWU Local 223 Vice President.

43.     TWU Local 223 further discriminated against Mr. Gruttemeyer based on his disability by directly undermining Mr. Gruttemeyer in his position at Metro and bringing accusations against Mr. Gruttemeyer that ultimately cost Mr. Gruttemeyer his job.

44.     TWU Local 223 discriminated against Mr. Gruttemeyer based on his disability by failing to provide Mr. Gruttemeyer with meaningful representation in his multiple grievances with Metro.  TWU Local 223 represented Mr. Gruttemeyer in name

only and refused to advocate on his behalf in spite of his requests that he receive union representation.

**CLAIM FOUR**
**TWU LOCAL 223 VIOLATED STATE & FEDERAL**
**LAW PROHIBITING**
**DISCRIMINATION BASED ON PERCEIVED DISABILITY**
Americans With Disabilities Act Of 1990
42 U.S.C. § 12101 et seq.
Neb. Rev. Stat. § 48-1104

45.     Mr. Gruttemeyer incorporates by reference paragraphs 1-44, inclusive, as if fully set forth.

46.     TWU Local 223 discriminated against Mr. Gruttemeyer based on his perceived disability by subjecting him to a hostile work environment based on his perceived disability.  Specifically, TWU Local 223 President Joe Boncardo made derogatory and hateful comments about Mr. Gruttemeyer's perceived disability to Mr. Gruttemeyer and other union members.  For example, Mr. Boncardo regularly called Mr. Gruttemeyer "crazy," "out of control," "not right in the head," and said that Mr. Gruttemeyer needed to "get some help."  To further his humiliation of Mr. Gruttemeyer, Boncardo encouraged co-workers and fellow union members to look into Mr. Gruttemeyer's history of disability, even providing them with the search terms that would lead them to learn more about Mr. Gruttemeyer's disability.

47.     TWU Local 223 discriminated against Mr. Gruttemeyer based on his perceived disability by forcing him to resign his position as TWU Local 223 Vice President.

48.     TWU Local 223 further discriminated against Mr. Gruttemeyer based on his perceived disability by directly undermining Mr. Gruttemeyer in his position at Metro and bringing accusations against Mr. Gruttemeyer that ultimately cost Mr. Gruttemeyer his job.

49.     TWU Local 223 discriminated against Mr. Gruttemeyer based on his perceived disability by failing to provide Mr. Gruttemeyer with meaningful representation in his multiple grievances with Metro.  TWU Local 223 represented Mr. Gruttemeyer in name only and refused to advocate on his behalf despite of his requests that he receive union representation.


**CLAIM SIX**
**TWU LOCAL 223 VIOLATED STATE & FEDERAL**
**LAW PROHIBITING**
**DISCRIMINATION BASED ON RECORD OF DISABILITY**
Americans With Disabilities Act Of 1990
42 U.S.C. § 12101 et seq.
Neb. Rev. Stat. § 48-1104

50.     Mr. Gruttemeyer incorporates by reference paragraphs 1-49, inclusive, as if fully set forth.

51.     TWU Local 223 discriminated against Mr. Gruttemeyer based on his record of disability by subjecting him to a hostile work environment based on his record disability.  Specifically, TWU Local 223 President Joe Boncardo made derogatory and hateful comments about Mr. Gruttemeyer's record of disability to Mr. Gruttemeyer and other union members.  For example, Mr. Boncardo regularly called Mr. Gruttemeyer "crazy," "out of control," "not right in the head," and said that Mr. Gruttemeyer needed to "get some help."

52.    TWU Local 223 discriminated against Mr. Gruttemeyer based on his record of disability by forcing him to resign his position as TWU Local 223 Vice President.

53.    TWU Local 223 further discriminated against Mr. Gruttemeyer based on his record disability by directly undermining Mr. Gruttemeyer in his position at Metro and bringing accusations against Mr. Gruttemeyer that ultimately cost Mr. Gruttemeyer his job.

54.    TWU Local 223 discriminated against Mr. Gruttemeyer based on his record of disability by failing to provide Mr. Gruttemeyer with meaningful representation in his multiple grievances with Metro.  TWU Local 223 represented Mr. Gruttemeyer in name only and refused to advocate on his behalf in spite of his requests that he receive union representation.

**CLAIM SEVEN**
**METRO VIOLATED STATE & FEDERAL**
**LAW PROHIBITING**
**RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY**
Age Discrimination in Employment Act of 1967
29 U.S.C. §623 et seq.
Neb. Rev. Stat. §48-1104

55.    Mr. Gruttemeyer incorporates by reference paragraphs 1-54, inclusive, as if fully set forth.

56.    The Age Discrimination in Employment Act of 1967 prohibits employers from discriminating against employees because such individual has opposed age discrimination.  29 U.S.C. §623(d).

57.    Mr. Gruttemeyer assisted his co-worker, Mr. Miller, in raising an age discrimination complaint at Metro.

58.   Mr. Gruttemeyer opposed Metro's discriminatory treatment of Mr. Miller.

59.   Due to Mr. Gruttemeyer assisting his co-worker with his age discrimination complaint, Metro suspended and ultimately terminated Mr. Gruttemeyer.

60.   Metro's alleged reason for terminating Mr. Gruttemeyer – an alleged verbal altercation with a co-worker- is not to be believed.  Boncardo, another Metro employee engaged in the same or similar conduct and was not suspended or terminated.

61.   There is no legitimate basis justifying Metro's retaliatory termination of Mr. Gruttemeyer.

## CLAIM EIGHT
## TWU LOCAL 223 VIOLATED STATE & FEDERAL LAW PROHIBITING
## RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY
Age Discrimination in Employment Act of 1967
29 U.S.C. §623 et seq.
Neb. Rev. Stat. §48-1104

62.   Mr. Gruttemeyer incorporates by reference paragraphs 1-61, inclusive, as if fully set forth.

63.   The Age Discrimination in Employment Act of 1967 prohibits labor organizations from discriminating against employees because such individual has opposed age discrimination.  29 U.S.C. §623(d).

64.   Mr. Gruttemeyer assisted his co-worker, Mr. Miller, in raising an age discrimination complaint at Metro.

65.   Mr. Gruttemeyer opposed Metro's discriminatory treatment of Mr. Miller.

66.   TWU Local 223 President Boncardo brought formal charges against Mr. Gruttemeyer based on Mr. Gruttemeyer's representation of Mr. Miller.

67.     Due to Boncardo's charges against him, Mr. Gruttemeyer felt he had no choice but to resign his position as TWU Local 223 Vice President.

68.     In further retaliation for Mr. Gruttemeyer representing Mr. Miller, TWU Local 223 attempted to deprive Mr. Gruttemeyer of employment opportunities by undermining Mr. Gruttemeyer's position at Metro and bringing false accusations against him.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Gruttemeyer requests for judgment ordering:

1.     An award of damages relating to Mr. Gruttemeyer's lost wages and future wages;

2.     An award of damages relating to Mr. Gruttemeyer's fringe benefits;

3.     An award of damages relating to Mr. Gruttemeyer's emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

4.     An award of damages relating to Mr. Gruttemeyer's out-of-pocket expenses for medical treatment; ordering other general, special or liquidated damages as proven at trial;

5.     An award of costs and attorney fees to Mr. Gruttemeyer against Metro; as allowed by law, and

6.     Any further legal or equitable relief as the Court may deem appropriate

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Date: <u>February 16, 2018</u>

**JOHN M. GRUTTEMEYER**, Plaintiff,

By:  /s/ *Alexis S. Mullaney*
Alexis S. Mullaney, #25908
**CARLSON & BURNETT LLP**
17525 Arbor Street
Omaha, NE 68130
Main: (402) 934-5500
Direct: (402) 68952-4175
*Attorneys for Plaintiff*
alexis@carlsonburnett.com

**Exhibit A**

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: John M. Gruttemeyer | From: St. Louis District Office |
|---|---|
| | 1222 Spruce Street |
| ▮▮▮▮▮▮▮▮▮▮ | Room 8.100 |
| | Saint Louis, MO 63103 |

| ☐ | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **32E-2016-00753** | Joseph J. Wilson, **State & Local Program Manager** | **(314) 539-7816** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Joseph Wilson*

**James R. Neely, Jr.,**
**Director**

January 8, 2018
*(Date Mailed)*

Enclosures(s)

cc:
**THE TRANSIT AUTHORITY OF THE CITY OF OMAHA**
**D/B/A Metro Area Transit**
**2222 Cuming St**
**Omaha, NE 68102**

Alexis Mullaney
**CARLSON & BURNETT**
**17525 Arbor St**
**Omaha, NE 68130**

Harvey B. Cooper
**ABRAHAMS KASLOW & CASSMAN**
**8712 W Dodge Rd, Ste 300**
**Omaha, NE 68114**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**  The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

➢ An impairment **may be substantially limiting even though it** lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** — **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge <u>within 90 days</u> of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** — **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than <u>2 years (3 years)</u> before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit <u>before 7/1/02</u> – *not* 12/1/02 – in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** — **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** — **All Statutes:**

You may contact the EEOC representative shown on your Notice if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need help in finding a lawyer, you may call **(314) 539-7911 in St. Louis, (913) 551-6609 in Kansas City, or (405) 231-5349 in Oklahoma City.** If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request <u>within 6 months</u> of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | [X] FEPA<br>[X] EEOC | NEB 2-16/17-8-47783-RD<br>32E-2016-00753 |

Nebraska Equal Opportunity Commission and EEOC
*State or local Agency, if any*

RECEIVED NEOC

AUG 04 2016

OMAHA OFFICE

| NAME *(indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Mr. John M. Gruttemeyer | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| The Transit Authority of the City of Omaha d/b/a Metro Area Transit | More than 500 Employees | (402) 341-1932 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2222 Cuming St | Omaha NE 68102-4392 | Douglas |

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| [ ] RACE [ ] COLOR [ ] SEX [ ] RELIGION [ ] NATIONAL ORIGIN<br><br>[X] RETALIATION [ ] AGE [X] DISABILITY [ ] GENETIC INFORMATION | EARLIEST 2/22/2016   LATEST 6/21/2016<br><br>[X] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I. I have a disability and a record of disability. I worked for the Respondent beginning, May 11, 2011, most recently as a utility placer. I complained about age discrimination on behalf of another employee. Due to my disability, record of disability, and in retaliation for my complaint, I was suspended and terminated.

II. I believe I have been discriminated against on the basis of retaliation, in violation of The Age Discrimination in Employment Act of 1967, as Amended and Section 48-1104 (4) of the Nebraska Fair Employment Practice Act, and on the bases of disability and record of disability, in violation of ADA Amendments Act of 2008, and Sections 48-1104 of the Nebraska Fair Employment Practice Act, in that:

1. In November 2015, I was elected to the Transport Workers Union of America, Local 223 Vice-President position. As part of my new duties, I signed up for a Union Workshop class taught by a Former Supervisor of mine for another employer, Mike McDonnell (No Known Disability). I believe McDonnell told Transport Workers Union of America, Local 223 President Joe Boncordo (No Known Disability) about my condition. After Boncordo learned about my condition, he told everyone I was a nut, all the issues I had with my past employer, and said 'this is the kind of guy we don't want as Vice-President.'

2. As part of my role with the Transport Workers Union of America, Local 223, around December 14, 2015, I represented a co-worker's (James Miller's) age complaint to manager Kurt Simon (No Known Disability). Respondent suspended me February 22, 2016, for assisting Miller with his age discrimination case. However, Respondent indicated I was suspended for acting aggressively toward Boncordo when he presented me with charges against me in my role as Union VP. I deny I acted aggressively towards Boncordo.

3. On April 18, 2016, I complained to HR Representative Edith Simpson (No Known Disability) that Respondent was in violation of its own contract regarding my suspension. On April 25, 2016, I also complained about this to the Boncordo and all executive board members via letter wherein I copied to them the April 18, 2016 letter I'd sent to Simpson.

Continued on page 2

John M. Gruttemeyer  vs. The Transit Authority of the City of Omaha d/b/a Metro Area Transit
Page 2

4.  Respondent returned me to work May 13, 2016 and required me to sign a last chance agreement, but I refused, so Respondent suspended me again on May 13, 2016.

5.  On May 31, 2016, I complained to the Union again and to Respondent's safety director David Jameson (No Known Disability) regarding my suspensions.

6.  On June 21 2016, Respondent sent a letter indicating that it would send another July 8, 2016 stating I was terminated.

7.  My performance is satisfactory.

---

I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I swear or affirm that I have read the above and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

x _John M. Gruttemeyer_

State of _Nebraska_   County of _Douglas_

On this, the _2nd_ day of _August_ , 20_16_,
The Complainant appeared before me, known to me (or satisfactorily proven) to be the person whose name is subscribed to this instrument, and acknowledged that they executed the same for the purposes therein contained.

Notary Public _Bridget Reagan_

Notary Seal

GENERAL NOTARY - State of Nebraska
BRIDGET REAGAN
My Comm. Exp. May 19, 2020

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: John M. Gruttemeyer | From: St. Louis District Office |
| | 1222 Spruce Street |
| | Room 8.100 |
| | Saint Louis, MO 63103 |

**Exhibit B**

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
| | **Joseph J. Wilson,** | |
| **32E-2016-00665** | **State & Local Program Manager** | **(314) 539-7816** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Joseph Wilson*

**James R. Neely, Jr.,**
**Director**

January 8, 2018
*(Date Mailed)*

Enclosures(s)

cc:
Joe Boncordo
**President TWU Local 223**
**TRANSPORT WORKERS UNION OF AMERICA**
**5418 S 27th St, Ste 7**
**Omaha, NE 68107**

Alexis Mullaney
**CARLSON & BURNETT**
**17525 Arbor St**
**Omaha, NE 68130**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of **major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   —   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA ),or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge within 90 days of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   —   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than 2 years (3 years) before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 – *not* 12/1/02 – in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   —   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   —   All Statutes:**

You may contact the EEOC representative shown on your Notice if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need help in finding a lawyer, you may call (314) 539-7911 in St. Louis, (913) 551-6609 in Kansas City, or (405) 231-5349 in Oklahoma City. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC FORM 131-À (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **Transport Workers Union of America, Local 223**<br>5418 S 27th St, #7<br>Omaha, NE 68107 | **John M. Gruttemeyer** |

| THIS PERSON (check one or both) |
|---|
| [X] Claims To Be Aggrieved |
| [ ] Is Filing on Behalf of Other(s) |

EEOC CHARGE NO.
**32E-2016-00665**

FEPA CHARGE NO.
**1-16/17-7-48135-RD**

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[ ] Title VII of the Civil Rights Act (Title VII)      [ ] The Equal Pay Act (EPA)      [X] The Americans with Disabilities Act (ADA)

[X] The Age Discrimination in Employment Act (ADEA)      [ ] The Genetic Information Nondiscrimination Act (GINA)

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____

[X] The  **Nebraska Equal Opportunity Commission** _____     *(FEP Agency)*     and sent to EEOC for dual filing purposes.
*(FEP Agency)*

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII, ADA or GINA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC.  This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s):  Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] Race   [ ] Color   [ ] Sex   [ ] Religion   [ ] National Origin   [X] Age   [X] Disability   [X] Retaliation   [ ] Genetic Information   [ ] Other

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| July 15, 2016 | **James R. Neely, JR,**<br>**Director** | *James R. Neely Jr.* |

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☒ FEPA<br>☒ EEOC | NEB 1-16/17-7-48135-RD<br>32E-2016-00665 |

Nebraska Equal Opportunity Commission and EEOC
*State or local Agency, if any*

RECEIVED NEOC

JUL 11 2016

LINCOLN OFFICE

| NAME *(Indicate Mr., Ms., Mrs.)*<br>Mr. John M. Gruttemeyer | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| STREET ADDRESS ▮▮▮▮▮▮ | CITY, STATE AND ZIP CODE ▮▮▮▮▮ | DATE OF BIRTH<br>9/22/1964 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME<br>Transport Workers Union of America, Local 223 | NUMBER OF EMPLOYEES, MEMBERS<br>Unknown Number of Employees | TELEPHONE *(Include Area Code)*<br>(402) 734-7851 |
|---|---|---|
| STREET ADDRESS<br>5418 S 27th St, #7   Omaha  NE  68107 | CITY, STATE AND ZIP CODE | COUNTY<br>Douglas |
| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN

[X] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION

DATE DISCRIMINATION TOOK PLACE
EARLIEST 2/1/2016     LATEST 5/31/2016

[X]  CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I.  I have a disability and a record of disability. I was a member of the Respondent since 2011, and became Vice-President in November 2015. I represented a Union Member in a discrimination investigation regarding age discrimination. Due to my disability, record of disability, and in retaliation for assisting in a discrimination investigation, the Respondent suspended me, constructively discharged me from my position, and failed to represent me. I believe the Respondent interfered in my employment with the Transit Authority of the City of Omaha d/b/a Metro Area Transit when I was suspended and my employment was terminated by Metro Area Transit.

II. I believe I have been discriminated against on the basis retaliation, in violation of The Age Discrimination in Employment Act of 1967, as Amended, and Section 48-1004(4) of the Nebraska Age Discrimination in Employment Act; and on the bases of disability and record of disability, in violation of ADA Amendments Act of 2008, and Sections 48-1104 and 48-1106 of the Nebraska Fair Employment Practice Act, in that:

1.  In November 2015, I was elected to the Respondent's Vice-President position. As part of my new duties, I signed up for a Union Workshop class which was taught by a Former Supervisor of mine for another employer, Mike McDonnell (No Known Disability). I believe Mr. McDonnell told the Respondent's President, Joe Boncordo (No Known Disability), about my condition. After Mr. Boncordo learned about my condition, he would tell everyone that I was a nut, all the issues I had with my past employer, and would say 'this is the kind of guy we don't want as Vice-President.'

2.  When I became Vice-President, I was told by Mr. Boncordo that if I assisted Union Member Jim Miller (No Known Disability) he was going to get me fired. Mr. Miller had filed an age discrimination case against the Transit Authority of the City of Omaha d/b/a Metro Area Transit, and in retaliation, his hours were illegally changed in violation of the contract, but the Respondent and Mr. Boncordo refused to represent Mr. Miller. I ignored Mr. Boncordo's warning and represented Mr. Miller when I asked the Executive Director Kurt Simon (No Known Disability) to have Mr. Miller's hours changed back. Mr. Simon informed Mr. Boncordo that I was helping Mr. Miller.

Continued on Page 2



John M. Gruttemeyer  vs. Transport Workers Union of America, Local 223
Page 2

3. In February 2016, I was suspended from my position with the Respondent, and with the Transit Authority of the City of Omaha d/b/a Metro Area Transit, for conduct unbecoming an officer. In my suspension papers, it stated that I had represented Mr. Miller against Mr. Boncordo's direction. I told Mr. Boncordo when he gave me the papers that the allegations were false, and then he alleged that I had threatened him, which I deny.

4. While on suspension, Dennis Hoguieson (No Known Disability, Recording Secretary) contacted me and told me that if I resigned my position as Vice-President, I might be able to keep my position with the Transit Authority of the City of Omaha d/b/a Metro Area Transit. Therefore, I resigned as Vice-President on March 1, 2016.

5. I was suspended with pay for about 12 weeks from my position with the Transit Authority of the City of Omaha d/b/a Metro Area Transit. During this time, I did not hear from the Respondent or the Transit Authority of the City of Omaha d/b/a Metro Area Transit, so on or about April 25, 2016, I sent a certified letter to the Respondent stating that no one had represented me or asked for a first step grievance on my behalf, and asked for representation. Following that letter, the Respondent contacted me, although it was past the seven days stipulated by the contract. The Respondent told me I was being brought back to work, and I returned on May 13, 2016. When I returned, I was asked to sign a last chance agreement, which I refused to sign, so I was placed back on suspension with pay.

6. On May 31, 2016, I sent another certified letter to the Respondent stating that no one had represented me or asked for another grievance on my behalf, and asked for representation. The Respondent contacted me and told me I was being terminated, on June 10, 2016, I attended a pre-termination hearing, the Respondent did send a Union Representative, Bill Kibbler (No Known Disability) to represent me.

7. My performance to date was satisfactory.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | State of _Nebraska_ County of _Douglas_<br>On this, the _8th_ day of _July_ , 20_16_<br>The Complainant appeared before me, known to me (or satisfactorily proven) to be the person whose name is subscribed to this instrument, and acknowledged that they executed the same for the purposes therein contained. |
| I swear or affirm that I have read the above and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT<br><br><br>X _John Gruttemeyer_ | Notary Public _Kathleen M. Foss_<br>Notary Seal<br><br>GENERAL NOTARY - State of Nebraska<br>KATHLEEN M. FORSGREN<br>My Comm. Exp. January 29, 2019 |